IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LA-SHON L. GEORGE,         )<br>    PLAINTIFF                    )<br>                                          )<br>VS.                                    )<br>                                          )<br>                                          )<br>BOARD OF REGENTS OF THE      )<br>UNIVERSITY OF NEBRASKA,       )<br>JEFF MILLER, LINDA CUNNINGHAM, )<br>JOAN HILL, SUSAN KRAFT MANN,   )<br>BRAD FEGLEY, CARMEN SIRIZZOTTI,)<br>    DEFENDANTS.                 )  | CASE NO.<br><br><br>COMPLAINT<br>(JURY DEMAND) |

COMES NOW, Plaintiff, La-Shon L. George, by and through her attorney, John D. Cartier, files their Complaint, complaining of the acts of the Board of Regents of the University of Nebraska ("BRUN"), Jeff Miller, Linda Cunningham, Joan Hill, Susan Kraft Mann, Brad Fegley, and Carmen Sirizzotti (collectively "Defendants"). Plaintiff requests a trial by jury, and for her causes of action against the Defendants, state and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action seeking redress for the violations of constitutionally and statutorily protected rights guaranteed the Plaintiff by Title VII of the Civil Rights, as amended, 42 U.S.C. §1981, as raised through 42 U.S.C. § 1983; the First Amendment of the United States Constitution; and the Nebraska Fair Employment Practices Act ("FERPA").

2. This court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This court has supplemental jurisdiction to hear and decide the pendent state law claims under 28 U.S.C. § 1367.

2. This court has supplemental jurisdiction to hear and decide the pendent state law claims under 28 U.S.C. § 1367.

3. Venue in the District of Nebraska is properly laid pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions alleged herein, which form the factual and legal basis of the claims of the Plaintiff, arose or occurred within the geographical limits of this District.

4. Plaintiff has met the administrative requirements of this action in that she filed a charge of discrimination with the Nebraska Equal Opportunity Commission and

the Equal Employment Commission and received a Notice of Right to Sue and timely filed suit with this Court.

## ENTITIES AND INDIVIDUALS

5. Plaintiff, La-Shon L. George, an African-American-woman, is a resident and citizen of Omaha, Douglas County, Nebraska and was at all times pertinent hereto, an "employee" of the Defendant(s) within the meaning of FEPA, Title VII, and Neb. Rev. Stat. § 48-1104.

6. Defendant Board of Regents of the University of Nebraska is a body corporate that exists and operates by virtue of the constitution and statutes of Nebraska and is a recipient of State and Federal funds.

7. University of Nebraska Medical Center ("UNMC") is a public institution of higher education governed and operated by the Defendant Board of Regents of the University of Nebraska with its principal place of business in Omaha, Douglas County, Nebraska.

8. Defendant, Jeff Miller, the Assistant Vice Chancellor for Business and FInance for UNMC was at all relevant times Plaintiff's supervisor and, was, accordingly, acting under state law and is sued in both his official and individual capacities.

9. Defendant, Linda Cunningham, Associate Director of UNMC Human Resources was at all times employed by BRUN and was, accordingly, acting under state law and is sued in both her official and individual capacities.

10. Defendant, Joan Hill, Director of Student Services was at all times employed by BRUN and was at all relevant times Plaintiff's supervisor and, accordingly, was acting under state law and is sued in both her official and individual capacities.

11. Defendant, Susan Kraft Mann, Assistant Vice Chancellor and Director of Budget and Fiscal Analysis at UNMC was at all times employed by BRUN and was at all relevant times Plaintiff's supervisor and, accordingly, was acting under state law and is sued in both her official and individual capacities.

12. Defendant, Brad Fegley, Controller for UNMC was at all times employed by BRUN and was at all relevant times Plaintiff's supervisor and, accordingly, was acting under state law and is sued in both his official and individual capacities.

13. Defendant, Carmen Sirizzotti, Assistant Vice Chancellor and Director of Human Resources was at all times employed by BRUN and, accordingly, was acting under state law and is sued in both her official and individual capacities.

**GENERAL ALLEGATIONS**

14. Plaintiff began working for UNMC at the Medical Center on or about August 28, 1998, as a Cashiering Associate.

15. One of the department supervisors, Terry Lilla, would often treat Plaintiff in a rough manner.

16. He started working at UNMC in 2013.

17. Until his departure in 2021, there were numerous instances where his behavior was inappropriate and racist towards Plaintiff.

18. Sometimes this showed itself with him exploding and yelling at Plaintiff.

19. He would often speak down to Plaintiff.

20. Plaintiff was sick one day and asked her supervisor, Terry Lilla, if she could open another cashier window that she would still mandate, because the Plaintiff only wanted foot traffic for work-related business only. Plaintiff was coughing and Mr. Lilla snapped and told the Plaintiff to shut up and "stay in your little corner."

21. Mr. Lilla would also sometimes slam his hand down on the counter and yell, "God damn it La-Shon."

22. When Plaintiff got sick in November 2019, Mr. Lilla responded by telling Plaintiff, "mind over matter." Plaintiff worked 5 weeks sick because of that.

23. Mr. Lilla would use Plaintiff's learning impairment against her and not explain new things to her like he did with other employees.

24. In November 2020, Plaintiff went to Human Resources and spoke to Angela Hayes.

25. Plaintiff wasn't there to complain, but more to ask for advice on how she could deal with Mr. Lilla.

26. Soon after, it was obvious that Mr. Lilla was told about the conversation, because he was mad at Plaintiff because he had been called into HR.

27. His bad treatment of Plaintiff continued through April 2021, until Plaintiff learned that he left employment when she was on sick leave.

28. On April 22, 2021, Plaintiff returned to work from her sick leave and was overwhelmed and was overwhelmed with the chaotic workload and rude bullying behavior from Craig Poole from Sponsored Programs and Lina Jiang, Manager of the Controller's Office. They made the Plaintiff feel like her out being sick was her fault based on the comment made by Jeff Miller. He stated to Plaintiff that, "I hear you THINK you have COVID."

29. May 20, 2021, there was a new meeting with Plaintiff's new supervisor, Joan Hill, the Vice Chancellor, and other co-workers.

30. Plaintiff's name kept being mentioned, written on the board, and talked about as the only one needing change or correction.

31. Under Lilla, Plaintiff had always been told to deposit the money by noon, which Plaintiff always did. But Ms. Hill purposely sabotaged Plaintiff by telling her to wait later in the afternoon.

32. That gave the impression to others that Plaintiff was dawdling and taking all day to get the deposit ready and Plaintiff was chastised for it in many different meetings.

33. Plaintiff left the meeting humiliated and went to HR and complained about the treatment, but it continued.

34. Ms. Hill would make comments about Plaintiff's hair being in her way, and comments about black people's hair being difficult to maintain, etc. She even asked one time if that was her "real hair?"

35. One time when Plaintiff was wearing hoop earrings and Ms. Hill told her that she looked like Frakenstein.

36. When it was Ms. Hill and Plaintiff in the office together she would play rap music. Plaintiff believes because she was stereotyping her, but not when others were in the office.

37. One day, Plaintiff told her that she was surprised that she would listen to that type of music and Ms. Hill said, "Why, cuz they use the word nigger in it?"

38. Ms. Hill also told Plaintiff that she should get on disability, and Ms. Hill continued on and told the Plaintiff, "I'm pretty sure your doctor would sign off on the paperwork."

4

39. All this treatment became too stressful and Plaintiff went on FMLA starting October 28, 2021.

40. This, among other instances attached to this Complaint, have seriously affected Plaintiff's quality of life as she's suffered humiliation, degradation, emotional distress and physical issues as a result.

41. January 4, 2022, Plaintiff went on to file a Charge of Discrimination against UNMC through the Nebraska Equal Opportunity Commission.

42. But things would continue to only get worse. Due to Plaintiff's race, disability, record of disability, and in retaliation for her NEOC charge, she was given adverse job assignments, subjected to wage harm, harassed, and subjected to different terms and conditions of employment.

43. On or about mid-2022, Plaintiff told her supervisor at the time, Vice Chancellor of Business and Finance Jeff Miller about her disability.

44. On or around August 26, 2022, Plaintiff met with Mr. Miller to discuss her job description.

45. At that time, new job duties were implemented for Plaintiff to do, that used to be the duties handled by her supervisor, Terry Lilla. These duties included receiving and determining open receivables and processing them with accounts receivable per standard operating procedures, and other duties related to what is called Rewards Cards.

46. Plaintiff and Mr. Miller also went over pay scales for her position and Mr. Miller said he would contact Compensation Specialist/Manager Alice Weyant to upgrade her pay scale since she was doing similar work to that of Craig Pool and Cindy Poffenbager.

47. Mr. Miller then resigned on or around October 21, 2022, before Plaintiff's pay scale was adjusted.

48. Before Mr. Miller left, he was overseeing Terry Lilla, Joan Hill, Brad Fegley, Julie Bouchard, Craig Poole, Lina Jiang, and Parker Thompson.

49. He allowed all these parties to treat Plaintiff poorly, and did not address Plaintiff's complaints of discrimination.

50. In fact, he tried to reverse the narrative that Plaintiff was the problem, not the employees who were abusive towards her.

51. The new supervisor that replaced Jeff Miller, Assistant Vice Chancellor and Director of Budget and Fiscal Analysis, Susan Kraft Mann, did not reach out to Plaintiff when she became her new supervisor at the end of October 2022.

52. Plaintiff ended up reaching out to her first and she eventually told her on December 6, 2022, that her pay scale would not be increased because she was not a Lead Cashier.

53. Plaintiff spoke up against bullying in the workplace, and as a result, she became a target of retaliation when they changed an internal process to make Plaintiff process Grant Funds, a responsibility that was Mr. Poole's.

54. Plaintiff was to assist payments when Mr. Poole was out of the office for an extended period of time. Due to the bullying and harassment Plaintiff regularly faced from Mr. Poole, however, she shared these concerns with Mr. Miller about not being the support person for him on those days he would be out of the office because of his unruly behavior.

55. Grant Fund money was a much more complex process and caused Plaintiff's health to deteriorate due to the high levels of stress.

56. Another email stated that Plaintiff would no longer be the support person for Mr. Poole, that decision was made because Plaintiff shared with Mr. Miller the rudeness of Mr. Poole's behavior to Plaintiff.

57. For example, one day Mr. Poole threw his paperwork in the office towards Plaintiff. He had 3 options. Come in the office because he had access to it, ring the bell at the window which would have prompted me to go to the window to hand deliver it to me or utilize Dropbox.  He chose to throw it in the office which hit a partition wall and it landed on the floor.

58. Plaintiff interpreted this action similar to how a person would throw a dog a newspaper and expect them to fetch it.

59. On November 1, 2022, Plaintiff in an email sent to Linda Cunningham reporting numerous cases of bullying against herself. Email attached hereto as **Exhibit A**.

60. One instance when Julie Bouchard told Plaintiff, "I told them that I did not want you fucking pulling money from the safe."

6

61. Plaintiff reported that Joan Hill would constantly harass Plaintiff and discriminate against her by making such comments such as asking Plaintiff if she lived in North Omaha, saying to her, "Be careful driving home because there is a drive-by shooting on the route that you take when going home."

62. Plaintiff also reported that Ms. Hill asked if Plaintiff wore a wig, and embarrassed her in front of others during meetings by saying that. "[Plaintiff] needs to move, because [her] hair is in the way."

63. Plaintiff reported that Brad Fegley would stand over Plaintiff, screaming at her while swinging both of his arms towards her as she was sitting down in a chair repeating, "when I email you, I expect you to answer my emails right away." All while standing in a threatening manner over Plaintiff.

64. Plaintiff also reported that Jeff Miller, during their weekly one-on-one meetings, would show no interest during the meetings:

> By sitting in a chair and closing his eyes as I stared in silence, waiting for him to open his eyes, he kept putting his right hand over his mouth by fake yawning very loud, (I can demonstrate the yawn) he would constantly look at his wrist watch, and during our last one on one meeting he was cursing. **Exhibit A**.

65. In response to Plaintiff's complaints to HR, on November 2, 2022, Associate Director of HR Linda Cunningham subjected Plaintiff to different terms and conditions of employment when she offered her two jobs that she was not qualified for as a direct replacement of her current position.

66. When PlaintiffI told her that she was declining the offers, Ms. Cunningham called Plaintiff and was upset.

67. Ms. Cunningham told Plaintiff that this was what they could do for her, as they couldn't get rid of "everyone in the Accounting Department" – something that Plaintiff had never requested.

68. Plaintiff felt like this was retaliation for filing her NEOC complaint as well as going to HR and asking for help with the discrimination and racism she encountered from her co-workers.

69. Furthermore, Plaintiff was treated differently from her other coworkers in several other ways:

  A. Plaintiff was the only person on the team who was constantly questioned about every move she made;
  B. She was the only one required to let her supervisor know when she would go to Lunch, or not go to Lunch;
  C. She was the only one required to let her supervisor know when she went to the restroom and got back.

  70. On or around December 13, 2022, Plaintiff was harassed by the Manager of General Accounting, Julie Bouchard, in that Ms. Bouchard sent Plaintiff a hostile email saying that I should be aware of a process that we were discussing and that I have been doing this job long enough to know what that process is.

  71. Plaintiff reported this to Ms. Mancraft as being hostile, and Ms. Mancraft was also on the email chain, however, she did nothing other than tell Plaintiff that the training that they were discussing in the email would not be hostile.

  72. Plaintiff was forced to change positions from Cashiering Associate at UNMC to an office associate position that primarily deals with nurses and has a completely different skill set than what was her previous job.

  73. Plaintiff was forced into this position because she had spoken up previously about the harassment she was facing, and UNMC's response was to attempt to shuffle her to another department where Plaintiff was unqualified to perform the work, this caused Plaintiff a great deal of anxiety and stress.

  74. This has caused Plaintiff extreme stress and anxiety. Every day at work feels like they are just trying to get rid of Plaintiff.

  75. Plaintiff doesn't understand why UNMC would move her from the position that she had for many years, to a place where I had no technical knowledge or real experience to prepare myself. The fact this came after Plaintiff's complaints against the harassment show it was in retaliation for speaking up.

  76. Over the last several years, Plaintiff has been discriminated against, harassed, and consequently punished after speaking out against the horrible treatment. Even after moving departments, employees such as Craig Poole continued to harass Plaintiff.

  77. From these experiences, Plaintiff has suffered extreme emotional distress and resulting health complications that she seeks compensation for. Plaintiff also seek compensation to address the difference in pay scale she received versus what she should have gotten.

78. Plaintiff began seeing Sheritta Strong, MD on or about February 2015. At that time she presented the issues of anxiety and depressed mood, by 2019 the quality of symptoms were described as "mild" by Dr. Strong.

79. However, overtime, these symptoms grew worse alongside the discrimination and racism she was continually facing at work.

80. By August 8, 27, 2019, Plaintiff's primary diagnosis was panic disorder, generalized anxiety disorder, insomnia, and mood disorder. The main stressor for these conditions came from the discriminatory work environment.

81. Plaintiff took medication and did therapy to address the issues, but they remained and got worse overtime because there was no change in her work environment. By November 15, 2021, Plaintiff's Sheehan Disability Scale measured 30, the highest score possible.

82. Another progress note dated December 14, 2021 stated, "[Plaintiff] is stressed to the max about what is happening at her job. The bullying and discrimination and racist events have made her fear returning to work in a traumatic fashion."

83. Many other progress notes also reference the discrimination Plaintiff faced for years, and how it had a direct impact on her health and wellbeing.

84. It is clear from the record that Plaintiff faced extreme bullying and harassment for years with little to no support from supervisors, human resources, or really anyone else within UNMC or under BRUN.

85. Over a short period, there were five different supervisors over Plaintiff, each who failed to address the issues of bullying and discrimination against Plaintiff, and sometimes participated in it themselves.

86. These supervisors were Terry Lilla, then Lina Jiang after he left April 2021, then Brad Fegley, then, after Plaintiff reported Fegley's behavior, it was Joan Hill. After reporting Ms. Hill's behavior Plaintiff's supervisor became Jeff Miller until he left. Plaintiff was then under Susan Kraft Mann until she was forced to change positions.

87. Plaintiff is asking for compensation to address the emotional and physical pain and suffering, deprivation of constitutional and civil rights, humiliation, degradation, public ridicule, past and future emotional distress; actual and compensatory damages, including but not limited to past, present and future pain and suffering, mental anguish, and loss of enjoyment of life.

88. As a result of the retaliation, discrimination, and racism she has suffered, Plaintiff filed a Charge of Discrimination with the NEOC on or about October 3, 2023. Plaintiff received a Right to Sue notice on March 19, 2024, making this action timely.

89. Plaintiff was also discriminated against by her lower pay compared to her coworkers. For example, Plaintiff made $20 an hour at the time she was removed from her position, she was assigned many of the same duties that Terry Lila (her prior supervisor) held after he left UNMC. He was making around $80,000 annually. When this was brought up to Jeff Miller, he said that Plaintiff would receive a raise to reflect the changes in duties; however that was subsequently denied after he left UNMC.

**CAUSES OF ACTION**
**COUNT I**
**42 U.S.C. § 1983, First Amendment**
**(Against BRUN, Jeff Miller, Linda Cunningham, Joan Hill, Susan Kraft Mann, Brad Fegley, and Carmen Sirizzotti in their official and individual capacities)**

90. Plaintiff refers to and incorporates by reference each and every allegation of Paragraphs 1 through 89 above as fully set forth herein.

91. Plaintiff spoke out on public concern by opposing the harassment of her coworkers and filed grievances.

92. Plaintiff was treated differently than other employees who had not opposed unlawful activity.

93. Defendants were acting under color of state law.

94. Defendants acted intentionally to deprive Plaintiff of her rights to equal protection while engaging in protected speech.

95. Defendants knew, at the time of Plaintiff's forced position change, that Plaintiff had been treated differently than other employees who had not engaged in protected speech by subjecting Plaintiff to retaliatory discipline actions because of the protected speech.

96. Defendants violated Plaintiff's right to free speech in contradiction of the Constitution of the United States of America (1st Amendment) as raised through 42 U.S.C. § 1983.

97. As a result of the actions of the Defendants acting in their individual capacity, Plaintiff suffered lost wages and was subjected to pain, suffering, humiliation, and loss of enjoyment of life and continues to do so and has incurred attorney's fees.

98. Punitive damages against Defendants are appropriate given their willful and/or reckless disregard of the Plaintiff's constitutional and statutorily protected rights.

**WHEREFORE** the Plaintiff pray for Judgment against Defendants as follows:

A. Demands for backpay to compensate discrepancy in income between her position and its roles and responsibilities compared to her coworkers;
B. Demands for compensatory damages for pain, suffering, and loss of enjoyment of life, from the Defendants acting individually;
C. Attorney's fees under 42 U.S.C. § 1988 from the Defendants acting individually.

**COUNT II**
**42. U.S.C. § 2000(e) *et seq*. ("Title VII")**
**Race Discrimination and Retaliation Constituting Hostile Work Environment (Against BRUN, Jeff Miller, Linda Cunningham, Joan Hill, Susan Kraft Mann, Brad Fegley, and Carmen Sirizzotti in their official and individual capacities)**

99. Plaintiff refers to and incorporates by reference each and every allegation of Paragraphs 1 through 89 above as fully set forth herein.

100. Defendants retaliated against Plaintiff after she engaged in the protected activities noted herein, in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 1981, and the Nebraska Fair Employment Practices Act.

101. By engaging in harassment, including removal of Plaintiff from her job position she held for over a decade, levying unequal terms and conditions of employment, against Plaintiff for filing administrative charges of discrimination and retaliation and opposing practices she sincerely and reasonably believed were discriminatory and retaliatory, Defendants have committed retaliation in violation of Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000(e) *et seq*.

102. Defendants' retaliation proximately caused Plaintiff emotional distress, anguish, frustration, and humiliation as she daily lives in apprehension that it will concout grounds for discharge and/or harass her to the point that she will be forced to resign because continuing to work in a position she was not qualified for has become intolerable and has expended considerable time, energy, and emotion in trying to advance her career and be treated equally.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants on her second cause of action.

**COUNT III**
**Nebraska Fair Employment Act §§ 48-1104, 1114**
**Discrimination and Retaliation from Protected Activity**
**(Against BRUN)**

103. Plaintiff refers to and incorporates by reference each and every allegation of Paragraphs 1 through 89 above as fully set forth herein.

104. The acts of the Defendants in forcing her to a different department after her complaints of discrimination were discriminatory and retaliatory in violation of the NFEPA.

105. The acts of the Defendants were intentional.

106. The Defendants articulated a business reason for her removal, but said business reason was a pretext to hide the discriminatory intent.

107. As a result of the unlawful acts of Defendants, Plaintiff suffered an adverse employment action and suffered damages for lost earnings and benefits.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants on her third cause of action.

**PRAYER FOR RELIEF**

As a direct and proximate result of Defendants' illegal and unjustified conduct, Plaintiff was injured and is entitled to recover for what she suffered in the past and will suffer in the future, including:

A. Deprivation of constitutional and civil rights;
B. Humiliation, degradation, public ridicule, and past and future emotional distress;
C. Actual and compensatory damages, including but not limited to past, present and future pain and suffering, mental anguish, loss of enjoyment of life and other economic losses;
D. All litigation expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum legally allowable judgment interest; and
E. Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE** the Plaintiff pray for Judgment against Defendants as follows:

A. Compensation for violation of constitutional and civil rights, compensatory damages for pain, suffering, mental anguish, and humiliation;
B. Compensation for economic damages sustained, such as receiving lower pay despite her job functions that aligned more closely with Lead Cashier and other supervisory roles;
C. Plaintiffs' cost in this action, including reasonable attorney fees, interest, and costs pursuant to 42 U.S.C. § 1988; and
D. Such relief as the Court deems just and equitable.