IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LA-SHON L. GEORGE,

               Plaintiff,

    vs.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEBRASKA, JEFF
MILLER, LINDA CUNNINGHAM, and BRAD
FEGLEY,

               Defendants.

**8:24CV217**

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR PARTIAL
JUDGMENT ON THE PLEADINGS**

In this case, an African-American woman working as a Cashiering Associate at the University of Nebraska Medical Center (UNMC) asserts claims against the Board of Regents of the University of Nebraska and three employees alleging racial discrimination, harassment, and retaliation. Filing 21. Somewhat more specifically, Plaintiff asserts race discrimination in violation of 42 U.S.C. § 1981 (Count I); retaliation in violation of 42 U.S.C. § 1981 (Count II); First Amendment retaliation pursuant to 42 U.S.C. § 1983 (Count III); retaliation in violation of Title VII of the Civil Rights Act of 1964 (Count IV); hostile environment race discrimination in violation of Title VII (Count V); and a claim of an unconstitutional policy and failure to investigate, supervise, and train pursuant to 42 U.S.C. § 1983 (Count VI). Filing 21 at 9–14. Counts IV and V are against the Board only, while Counts I, II, III, and VI are against the Board and the Individual Defendants. Defendants have filed a "Partial Motion [sic] for Judgment on the Pleadings" seeking an order "partially dismiss[ing]" Plaintiff's Second Amended Complaint. Filing 33 at 1. Defendants seek judgment on Counts I and II for failure "as a matter of law" and Count VI against the Board for failure "as a matter of law." Filing 34 at 8–10, 16–17. They also seek judgment in favor of the Individual Defendants on Counts I, II, III, and VI based on

qualified immunity. Filing 34 at 10–16. Defendants do not seek judgment on Counts III, IV, or V against the Board. For the reasons set out below, Defendants' Motion for Partial Judgment on the Pleadings is granted. Thus, this case will proceed only on Plaintiff's claims against the Board in Counts III, IV, and V.

## I. INTRODUCTION

### A. Factual Background

On a motion for judgment on the pleadings, the court must "accept as true all facts pled by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023) (quoting *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001)). "Courts may also consider matters incorporated by reference or integral to the claim." *Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 903 (8th Cir. 2017) (cleaned up). Thus, the factual background set out here is drawn from Plaintiff's Second Amended Complaint and any matters incorporated into that pleading.

### 1. *Parties and Key Figures*

Plaintiff La-Shon L. George is an African-American woman who began working for UNMC at the Medical Center on or about August 28, 1998, as a Cashiering Associate. Filing 21 at 2 (¶¶ 5, 11). Defendant Board of Regents of the University of Nebraska (the Board) is "a body corporate that exists and operates by virtue of the constitution and statutes of Nebraska and is a recipient of State and Federal funds." Filing 21 at 2 (¶ 6). As relevant here, the Board governs and operates UNMC as a public institution of higher education. Filing 21 at 2 (¶ 7). Defendant Jeff Miller was the Assistant Vice Chancellor for Business and Finance for UNMC and was George's supervisor until October 2022. Filing 21 at 2 (¶ 8). Defendant Linda Cunningham was employed by the Board as the Associate Director of UNMC Human Resources. Filing 21 at 2

(¶ 9). Defendant Brad Fegley was employed by the Board as the Controller for UNMC and was at all relevant times one of George's supervisors. Filing 21 at 2 (¶ 10).

Other persons figure in George's Second Amended Complaint but are not named as defendants. One such person is Terry Lilla, who was a department supervisor who worked at UNMC from 2013 until 2021. Filing 21 at 2 (¶¶ 12–14). Joan Hill, the Vice Chancellor, became one of George's supervisors apparently in May 2021. Filing 21 at 3 (¶ 26). Julie Bouchard was the Manager of General Accounting. Filing 21 at 7 (¶ 67). Susan Kraft Mann, the Assistant Vice Chancellor and Director of Budget and Fiscal Analysis, replaced Miller as George's supervisor at the end of October 2022. Filing 21 at 5 (¶ 48). Craig Poole, "from Sponsored Programs," worked or interacted regularly with George. Filing 21 at 3 (¶ 25).

 2.  *George's Allegations of Discrimination, Harassment, and Retaliation*

George's Second Amended Complaint sets out a primarily chronological account of alleged misconduct to which George was subjected during her employment with UNMC. Filing 21 at 2–9. Where possible, the Court will present her allegations as they relate to Defendants and key figures.

 a.  Terry Lilla's Conduct

George alleges that non-party Lilla "would often treat [her] in a rough manner" and in numerous instances engaged in "inappropriate and racist" behavior toward her. Filing 21 at 2 (¶¶ 12, 14). George gives as example that Lilla would "explod[e] and yell[ ] at [her]," "speak down to [her]," "sometimes slam his hand down on the counter and yell, 'God damn it La-Shon,'" and "use [her] learning impairment against her and not explain new things to her like he did with other employees." Filing 21 at 2–3 (¶¶ 15–16, 18, and 20). She also alleges,

> 17.    Plaintiff was sick one day and asked her supervisor, Terry Lilla, if she could open another cashier window that she would still mandate, because the Plaintiff only wanted foot traffic for work-related business only. Plaintiff was

3

coughing and Mr. Lilla snapped and told the Plaintiff to "shut up and stay in your little corner."

　　　　　* * *

19.　　When Plaintiff got sick in November 2019, Mr. Lilla responded by telling Plaintiff, "mind over matter." Plaintiff worked 5 weeks sick because of her supervisor's statements and behavior[.]

Filing 21 at 2–3 (¶¶ 17, 19). George also alleges that, in November 2020, she went to Human

Resources (HR) not to complain about Lilla "but more to ask for advice on how she could deal

with Mr. Lilla." Filing 21 at 3 (¶ 22). She alleges that "it was obvious that Mr. Lilla was told

about the conversation, because he was mad at Plaintiff because he had been called into HR."

Filing 21 at 3 (¶ 23).

George alleges that Tilla's "bad treatment of Plaintiff continued through April 2021, until

Plaintiff learned that he left employment when she was on sick leave." Filing 21 at 3 (¶ 24).

However, she alleges that mistreatment continued even after Tilla left:

25.　　On April 22, 2021, Plaintiff returned to work from her sick leave and was overwhelmed with the chaotic workload and rude bullying behavior from Craig Poole from Sponsored Programs and Lina Jiang, Manager of the Controller's Office. They made the Plaintiff feel like her out being sick was her fault based on the comment made by Jeff Miller. He stated to Plaintiff that, "I hear you THINK you have COVID."

Filing 21 at 3 (¶ 25).

　　b.　Joan Hill's Conduct

On May 20, 2021, non-party Joan Hill—George's new supervisor—held a meeting with

George and other coworkers. Filing 21 at 3 (¶ 26). George makes the following allegations about

that meeting or other meetings:

27.　　Plaintiff's name kept being mentioned, written on the board, and talked about as the only one needing change or correction.

>       28.    Under Mr. Lilla, Plaintiff had always been told to deposit the money by noon, which Plaintiff always did. But Ms. Hill purposely sabotaged Plaintiff by telling her to wait later in the afternoon.
>
>       29.    That gave the impression to others that Plaintiff was dawdling and taking all day to get the deposit ready and Plaintiff was chastised for it in many different meetings.
>
>       30.    Plaintiff left the meeting humiliated and went to HR and complained about the treatment, but it continued.

Filing 21 at 3–4 (¶¶ 27–30). George alleges that Hill would make comments about George's hair being in her way, about "black peoples' hair being difficult to maintain," and even asked George if that was her "real hair." Filing 21 at 4 (¶ 31). Hill also told George that her hoop earrings made her look like "Frakenstein" [sic]; played rap music when she was in the office with George, which George "believes [was] because she was stereotyping [George]"; responded to George's statement that she was surprised that Hill liked that type of music by asking, "Why, cuz they use the word nigger in it?"; and told George she should get on disability because she was "pretty sure [George's] doctor would sign off on the paperwork." Filing 21 at 4 (¶¶ 32–35).[1]

George makes two further allegations about Hill's conduct:

>       58.    Plaintiff reported that Joan Hill would constantly harass Plaintiff and discriminate against her by making such comments such as asking Plaintiff if she lived in North Omaha, saying to her, "Be careful driving home because there is a driveby shooting on the route that you take when going home."
>
>       59.    Plaintiff also reported that Ms. Hill asked if Plaintiff wore a wig, and embarrassed her in front of others during meetings by saying that. "[Plaintiff] needs to move, because [her] hair is in the way."

Filing 21 at 6 (¶¶ 58–59).

---

[1] Although there are various references to George's "disability" in her Second Amended Complaint, the only allegation the Court has found providing any information about the nature of her "disability" is that it is a "learning disability." Filing 21 at 3 (¶ 20). George's claims are based on her race not her disability.

c. Craig Poole's Conduct

George alleged that non-party Craig Poole from Sponsored Programs engaged in "rude bullying behavior" toward her. Filing 21 at 3 (¶ 25). More specifically, George alleges that she became the target of retaliation after she complained about bullying when she was assigned to process grant funds, a responsibility that was Poole's. Filing 21 at 5 (¶ 50). As an example of Poole's conduct, she alleges,

> [O]ne day Mr. Poole threw his paperwork in the office towards Plaintiff. He had 3 options. Come in the office because he had access to it, ring the bell at the window which would have prompted [George] to go to the window to hand deliver it to [her] or utilize Dropbox. He chose to throw it in the office which hit a partition wall and it landed on the floor.

Filing 21 at 6 (¶ 54). George "interpreted this action [to be] similar to how a person would throw a dog a newspaper and expect them to fetch it." Filing 21 at 6 (¶ 55). George alleges,

> 51.    Plaintiff was to assist payments when Mr. Poole was out of the office for an extended period of time. Due to the bullying and harassment Plaintiff regularly faced from Mr. Poole, however, she shared these concerns with Mr. Miller about not being the support person for him on those days he would be out of the office because of his unruly behavior.

Filing 21 at 5 (¶ 51). As a result, Miller emailed her that she would no longer be Poole's support person. Filing 21 at 6 (¶ 53). However, George alleges that "[e]ven after moving departments [which occurred at some time in 2022] . . . Craig Poole continued to harass [her]." Filing 21 at 8 (¶ 73).

d. Jeff Miller's Conduct

George alleges that in about mid-2022, she told Defendant Jeff Miller, who was one of her supervisors at the time, about her disability, and she met with him again on or about August 26, 2022, to discuss her job description. Filing 21 at 4–5 (¶¶ 40–41). George alleges,

> 42.    At that time, new job duties were implemented for Plaintiff to do, that used to be the duties handled by her supervisor, Terry Lilla. These duties included receiving and determining open receivables and processing them with

accounts receivable per standard operating procedures, and other duties related to what is called Rewards Cards.

43.    Plaintiff and Mr. Miller also went over pay scales for her position and Mr. Miller said he would contact Compensation Specialist/Manager Alice Weyant to upgrade her pay scale since she was doing similar work to that of Craig Pool[e] and Cindy Poffenbager.

44.    Mr. Miller then resigned on or around October 21, 2022, before Plaintiff's pay scale was adjusted.

45.    Before Mr. Miller left, he was overseeing Terry Lilla, Joan Hill, Brad Fegley, Julie Bouchard, Craig Poole, Lina Jiang, and Parker Thompson.

46.    [Miller] allowed all these parties to treat Plaintiff poorly, and did not address Plaintiff's complaints of discrimination.

Filing 21 at 5 (¶¶ 42–46); *see also* Filing 21 at 9 (¶ 85) (alleging that Miller told George that she would receive a raise to reflect that her duties were the same as Lilla had held, but "that was subsequently denied after [Miller] left UNMC"). George alleges that Miller's replacement, non-party Susan Kraft Mann, did not reach out to George, and when George reached out to her, she told George on December 6, 2022, that her pay scale would not be increased because she was not a Lead Cashier. Filing 21 at 5 (¶¶ 48–49).

George also alleges that Miller showed no interest in her complaints of bullying during their weekly one-on-one meetings, explaining that he showed his lack of interest,

[b]y sitting in a chair and closing his eyes as I stared in silence, waiting for him to open his eyes, he kept putting his right hand over his mouth by fake yawning very loud, (I can demonstrate the yawn) he would constantly look at his wrist watch, and during our last one on one meeting he was cursing.

Filing 21 at 6–7 (¶ 61).

e.    Linda Cunningham's Conduct

George alleges that on November 1, 2022, she sent an email to Defendant Linda Cunningham, the Associate Director of UNMC Human Resources, reporting numerous cases of bullying against her. Filing 21 at 6 (¶ 56); *see also* Filing 21-1 (copy of the email). In addition to

7

conduct of Hill and Miller, George alleges that she reported the only instance of conduct of

Defendant Brad Fegley set out in the Second Amended Complaint:

> 60.      Plaintiff reported that Brad Fegley would stand over Plaintiff, screaming at her while swinging both of his arms towards her as she was sitting down in a chair repeating, "When I email you, I expect you to answer my emails right away." All while standing in a threatening manner over Plaintiff.

Filing 21 at 6 (¶ 60).

George alleges the following about Cunningham's response:

> 62.      In response to Plaintiff's complaints to HR, on November 2, 2022, Associate Director of HR Linda Cunningham subjected Plaintiff to different terms and conditions of employment when she offered her two jobs that she was not qualified for as a direct replacement of her current position.

> 63.      When Plaintiff told her that she was declining the offers, Ms. Cunningham called Plaintiff and was upset.

> 64.      Ms. Cunningham told Plaintiff that this was what they could do for her, as they couldn't get rid of 'everyone in the Accounting Department', something that Plaintiff had never requested.

> 65.      Plaintiff felt like this was retaliation for filing her NEOC complaint as well as going to HR and asking for help with the discrimination and racism she encountered from her co-workers.

Filing 21 at 7 (¶¶ 62–65).

> f.    Other Conduct

George filed a charge of discrimination against UNMC through the Nebraska Equal

Opportunity Commission (NEOC) on January 4, 2022, but she alleges that things only continued

to get worse. Filing 21 at 4 (¶¶ 38–39). She alleges, "Due to Plaintiff's race, disability, record of

disability, and in retaliation for her NEOC charge, she was given adverse job assignments,

subjected to wage harm, harassed, and subjected to different terms and conditions of

employment." Filing 21 at 4 (¶ 39). She alleges that in one instance, Julie Bouchard told

Plaintiff, 'I told them that I did not want you fucking pulling money from the safe.'" Filing 21 at

6 (¶ 57). She also alleges that Bouchard sent her a "hostile email" on December 13, 2022, "saying that she should be aware of a process that they were discussing and that she has been doing this job long enough to know what that process is." Filing 21 at 7 (¶ 67). George alleges that she reported this incident to "Ms. Mancraft," presumably meaning Ms. Kraft Mann, who had also been in the email chain, but she "did nothing other than tell Plaintiff that the training that they were discussing in the email would not be hostile." Filing 21 at 7 (¶ 68).

George alleges,

> 66.    Furthermore, Plaintiff was treated differently from her other coworkers in several other ways:
>
>    A.    Plaintiff was the only person on the team who was constantly questioned about every move she made;
>
>    B.    She was the only one required to let her supervisor know when she would go to Lunch, or not go to Lunch;
>
>    C.    She was the only one required to let her supervisor know when she went to the restroom and got back.

Filing 21 at 7 (¶ 66). She also alleges,

> 69.    Plaintiff was forced to change positions from Cashiering Associate at UNMC to an office associate position that primarily deals with nurses and has a completely different skill set than what was her previous job.
>
> 70.    Plaintiff was forced into this position because she had spoken out previously about the harassment she was facing, and UNMC's response was to attempt to shuffle her to another department where Plaintiff was unqualified to perform the work, this caused Plaintiff a great deal of anxiety and stress.

Filing 7–8 (¶¶ 69–70). George asserts that "[t]he fact this came after [her] complaints against the harassment show[s] it was in retaliation for speaking out." Filing 21 at 8 (¶ 72).

### 3.  The Alleged Impact on George

George alleges that treatment by Lilla, Hill, and others became so stressful that she went on FMLA leave starting October 28, 2021. Filing 21 at 4 (¶ 36). She alleges further that these

"among other instances" seriously affected her quality of life, as she has "suffered humiliation, degradation, emotional distress and physical issues as a result." Filing 21 at 4 (¶ 37). As mentioned above, George alleges that, because working with grant fund money—which she did as Poole's support person—was a much more complex process, the stress from doing it caused her health to deteriorate. Filing 21 at 6 (¶ 52). Similarly, she alleges that the transfer to a different department caused her "extreme stress and anxiety" and that "[e]very day at work it feels like they are just trying to get rid of [her]." Filing 21 at 8 (¶ 70). George alleges that she has seen a doctor who has noted the increase in her symptoms and that she has suffered impacts on her health and wellbeing. Filing 21 at 8–9 (¶¶ 75–80).

### B. Procedural Background

George filed her original Complaint in this action on June 12, 2024. Filing 1. She filed an Amended Complaint that same day. Filing 3. Before Defendants filed any answer, George filed her Second Amended Complaint on September 4, 2024. Filing 21. The Second Amended Complaint remains her operative pleading.

Count I of George's Second Amended Complaint, against the Board and Miller, Cunningham, and Fegley in their individual capacities, is captioned as "Violation of 42 U.S.C. § 1981." Filing 21 at 9. The gravamen of this claim is that "Defendants' actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of race in violation of 42 U.S.C. § 1981, as raised through 42 U.S.C. § 1983." Filing 21 at 10 (¶ 89). George adds, "The effect of the conduct was to deprive Plaintiff of economic opportunities and otherwise adversely affect Plaintiff's status as an employee, because of her race." Filing 21 at 10 (¶ 90). Count II, also against the Board and Miller, Cunningham, and Fegley in their individual capacities, is captioned as "42 U.S.C. § 1981 Retaliation." Filing 21 at 10. Unlike Count I, it includes no reference to the claim being "raised through" § 1983.

However, it does include allegations that George "engaged in protected conduct when they [sic] complained about race-based discrimination"; "Defendants subjected Plaintiff to adverse employment actions after Plaintiff engaged in protected conduct"; "[t]here was a causal connection between the protected conduct and the adverse action"; and [a]s a direct and proximate result of these actions, Plaintiff has suffered financial and physical well-being damages." Filing 21 at 10–11 (¶¶ 96–99).

Count III, also against the Board and Miller, Cunningham, and Fegley in their individual capacities, is captioned as "42 U.S.C. § 1983, First Amendment." Filing 21 at 11. The gravamen of this claim is that "Plaintiff spoke out on public concern by opposing the harassment of her coworkers and filed grievances. She then suffered adverse employment actions after Plaintiff engaged [in] this protected conduct." Filing 21 at 11 (¶ 102).

Count IV, against the Board only, is captioned as "42 U.S.C. § 2000(e) [sic] *et seq.* ('Title VII') Retaliation." Filing 21 at 12.[2] The essence of this claim is that "Defendants retaliated against Plaintiff after she engaged in the protected activities noted herein, in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 1981." Filing 21 at 12 (¶ 111). Count V, also against the Board only, is captioned as "42. U.S.C. § 2000(e) [sic] *et seq.* ('Title VII') Race Discrimination Constituting Hostile Work Environment." Filing 21 at 12. The gravamen of this claim is that "Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.*"

---

[2] There is no 42 U.S.C. § 2000(e). Rather, Title VII of the Civil Rights Act of 1964 is codified at 42 U.S.C. § 2000e *et seq.*

Filing 21 at 12 (¶ 115).[3] Count VI, also against the Board and Miller, Cunningham, and Fegley in their individual capacities, is captioned as "42 U.S.C. § 1983, (Unconstitutional official policy; failure to investigate, supervise and train)." Filing 21 at 13. The gravamen of this claim is that "Defendant [Board], by and through its policy makers, failed to ensure through custom, policy and/or practice or training that its employees and supervisors would obey, follow, and otherwise and [sic] abide by appropriate protocol and procedures regarding discrimination in the workplace and other violations of civil rights and failed to properly investigate complaints or incidents of such unlawful conduct by its employees." Filing 21 at 13 (¶ 122).

Defendants filed the "Partial Motion for Judgment on the Pleadings" now before the Court on February 7, 2025. Filing 33. In their Motion for Partial Judgment, Defendants seek dismissal of Counts I, II, and VI in their entirety based on failure of the claims as a matter of law, and the dismissal of Counts I, II, III, and VI against the Individual Defendants based on qualified immunity. Filing 33 at 1–2; Filing 34 at 3–4. Defendants do not challenge the First Amendment retaliation claim pursuant to § 1983 against the Board in Count III or the Title VII claims against the Board in Counts IV and V of George's Second Amended Complaint. George filed her Brief in Opposition on February 27, 2025, Filing 35, and Defendants filed their Reply on March 6, 2025, Filing 36. No party submitted any documents in addition to the pleadings to be considered in relation to the Motion.

---

[3] There is no reference to "hostile work environment" or "harassment" in the numbered allegations in Count V. However, the prohibition on a hostile environment under Title VII is drawn from 42 U.S.C. § 2000e-2(a)(1). *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1083 (8th Cir. 2010) ("Title VII prohibits a racially hostile work environment." (citing 42 U.S.C. § 2000e–2(a)(1))), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). 42 U.S.C. § 2000e-2(a)(1) prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." George's allegations in support of this claim appear to align with the statutory text.

## II. LEGAL ANALYSIS

The Court will consider in turn Defendants' challenges to Counts I, II, and VI based on the purported failure of those claims "as a matter of law," then consider Defendants' challenges to the claims against the Individual Defendants in Counts I, II, III, and VI based on qualified immunity to the extent necessary. However, the Court will first set out the standards for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

### A. Standards for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows a party "to move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Eighth Circuit Court of Appeals has noted the difference between a Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6) motion to dismiss for failure to state a claim "is purely formal." *Sletten & Brettin Orthodontics, LLC v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (internal quotation and citation omitted). More specifically, the Eighth Circuit as explained, "As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *In re Pre-Filled Propane Tank Antitrust Litigation*, 893 F.3d 1047, 1056 (8th Cir. 2018) (quoting *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010)). While the standards are the same for a Rule 12(c) motion as for a Rule 12(b)(6) motion, the results are different.

A judgment is a different disposition from a dismissal. *Cf. Abdulsalam v. Bd. of Regents*, No. 4:22-cv-3004, 2023 WL 4266378, at *3 (D. Neb. June 29, 2023) (citing *Self v. I Have A Dream Found.-Colorado*, 552 F.App'x 782, 783 (10th Cir. 2013) (noting "dismissal and summary judgment are two different dispositions")). A judgment is a final decree or order from which an appeal will lie. *See* Fed. R. Civ. P. 54(a). On the other hand, a dismissal is only "presumptively final," and the district court may allow amendment so that the dismissal is an

interlocutory order from which an appeal will not lie. *Sapp v. City of Brooklyn Park*, 825 F.3d 931, 934 (8th Cir. 2016).

In this case, Defendants are not able to move for dismissal under Rule 12(b)(6) for failure to state a claim because they have already filed their joint Answer to George's Second Amended Complaint. Filing 23; *compare* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading. . . ."), *with* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). However, Rule 12(h)(2)(B) provides that a motion for failure to state a claim is not waived by failure to assert it pre-answer, because that Rule allows a party to raise "failure to state a claim upon which relief could be granted . . . by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2)(B). Therefore, because this matter comes before the Court on Defendants' Rule 12(c) Motion for Judgment on the Pleadings, the Court shall determine whether to grant judgment in favor of Defendants on the challenged claims not whether it should dismiss those claims.

When considering either a Rule 12(c) motion or a Rule 12(b)(6) motion, the Court must "accept as true the facts alleged in . . . the amended complaint and grant all reasonable inferences in [the nonmovant's] favor, determining whether she pled 'enough facts to state a claim to relief that is plausible on its face.'" *Spagna v. Phi Kappa Psi, Inc*, 30 F.4th 710, 715 (8th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility is demonstrated when there is sufficient factual content in the complaint allowing a court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Kiefer v. Isanti Cnty*, 71 F.4th 1149, 1152 (8th Cir. 2023) (citing *Gallagher v. City of Clayton*, 699 F.3d 1013 (8th Cir. 2012), in turn citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action . . .

[and that] tenders naked assertions devoid of further factual enhancement" will not suffice. *In re Pre-Filled Propane Tank Antitrust Litigation*, 893 F.3d at 1056 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotations omitted). The Court "generally may not consider materials outside the pleadings in deciding whether to grant a motion for judgment on the pleadings [but] may consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (internal citations and quotations omitted).

### B. Counts Challenged for Failure to State Claims

#### 1. *George's § 1981 Claim of Race Discrimination in Count I*

Count I of George's Second Amended Complaint, against the Board and Miller, Cunningham, and Fegley in their individual capacities, is captioned as "Violation of 42 U.S.C. § 1981." Filing 21 at 9. It is based on actions that allegedly subjected George to different terms and conditions of employment constituting unlawful discrimination based on race. Filing 21 at 10 (¶ 89). George alleges that this violation of § 1981 is "raised through 42 U.S.C. § 1983." Filing 21 at 9–10 (caption, ¶ 89). Defendants ask the Court to dismiss Count I in its entirety on the ground that George has failed to allege that any of the Defendants engaged in intentional discrimination. Filing 33 at 1 (¶ 1).

##### a. The Parties' Arguments

Defendants argue that a § 1981 claim for racial discrimination requires a plaintiff to allege and prove a defendant's intent to discriminate on the basis of race. Filing 34 at 9. However, Defendants assert that George's Second Amended Complaint contains no reference to or allegation of intent of any Defendant. Filing 34 at 9. Defendants argue further that no intention to discriminate can be inferred or construed from George's allegations. Filing 34 at 9. Instead,

Defendants argue that George offers only "meager allegations" insufficient to state a claim. Filing 34 at 9 (citing Filing 21 at 10 (¶¶ 88–89).

George counters that she has clearly alleged that Defendants subjected her to discrimination and harassment based on race, which she argues "constitutes intentional discrimination under 42 U.S.C. [§] 1981." Filing 35 at 6. She asserts further that her allegations include specific instances of discriminatory and hostile conduct by her supervisors. Filing 35 at 7. Specifically, she cites the following allegations:

> Supervisor Joan Hill made repeated discriminatory remarks about Plaintiff's hair and racial stereotypes. [*Filing 21* ¶¶ *31-34*]. Craig Poole threw paperwork at Plaintiff, treating her with demeaning hostility. [*Id.* ¶¶ *54-55*]. Plaintiff was paid significantly less than White colleagues despite similar job responsibilities. [*Id.* ¶¶ *85*]. Supervisors ignored or perpetuated workplace harassment based on race. [*Id.* ¶¶ *46, 60*].

Filing 35 at 7 (emphasis in the original).

In reply, Defendants argue that George cites four purported incidents alleged in the Second Amended Complaint in support of her contention but that none of those incidents demonstrates an intent to discriminate based on race. Filing 36 at 3.

   b.   Section 1981 Discrimination Standards

As the Eighth Circuit has explained, "Section 1981 provides that all persons shall have the same right to 'make and enforce contracts . . . as is enjoyed by white citizens,' which includes the right to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Warren v. Kemp*, 79 F.4th 967, 972–73 (8th Cir. 2023) (quoting 42 U.S.C. § 1981(a)-(b)), *cert. denied*, 144 S. Ct. 1010 (2024). The Eighth Circuit has stressed that "[a] critical element" of a claim of violation of the . . . federal civil rights laws pursuant to 42 U.S.C. §§ 1981 and 1983 is '*intentional* discrimination.'" *Absolute Essence LLC v. Pub. Consulting Grp. LLC*, 117 F.4th 1044, 1048 (8th Cir. 2024) (emphasis in the original); *Warren*,

79 F.4th at 973 ("To prove a § 1981 discrimination claim, a plaintiff must establish membership in a protected class, discriminatory intent by the defendant, engagement in a protected activity (e.g., attempting to make a contract or having an existing contractual relationship), and interference with that activity."). This "intentional discrimination" requirement is not met if "the complaint is 'flush with legal conclusions but short on facts.'" *Id.* (quoting *DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th 813, 816 (8th Cir. 2024)). Furthermore, the allegations must show that the misconduct was motivated by a discriminatory intent. *Id.*

> c. George's Complaint Does Not Plausibly Suggest That Alleged Misconduct Was Motivated by Discriminatory Intent

Even accepting George's allegations about misconduct as true, her assertions that the alleged misconduct was motivated by an intent to discriminate are entirely conclusory. *Absolute Essence LLC*, 117 F.4th at 1048 (explaining that factual allegations not legal conclusions must show misconduct was motivated by a discriminatory intent); *In re Pre-Filled Propane Tank Antitrust Litigation*, 893 F.3d at 1056 (explaining that under Rule 12(c), "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action . . . [that] tenders naked assertions devoid of further factual enhancement" will not suffice (quoting *Twombly*, 550 U.S. at 555, 557)). Thus, they are insufficient to plead intent to discriminate.

Specifically, the allegation that Poole "threw his paperwork in the office towards Plaintiff" includes no reference to race at all. Filing 21 at 6 (¶ 54). Not even George's interpretation of this action as "similar to how a person would throw a dog a newspaper and expect them to fetch it," Filing 21 at 6 (¶ 55), plausibly suggests a racially discriminatory intent behind Poole's conduct. George's assertion that she has alleged that she was paid significantly less than white colleagues despite similar job responsibilities is not reflected in ¶ 85 of her Second Amended Complaint on which she relies. Filing 35 at 7. Although George does allege

17

that Defendants "discriminated against by her lower pay compared to her coworkers," she fails to allege that discriminatory intent was behind that treatment. Filing 21 at 9 (¶ 85). George does not plausibly allege that she was similarly situated to her coworkers in all but race, she merely alleges that coworkers were similarly situated in a vague and conclusory manner. Filing 21 at 9 (¶ 85).

George's allegations that supervisors ignored or perpetuated workplace harassment based on race are also unavailing to demonstrate discriminatory intent. The allegations she points to as support are the following:

> 46.    [Miller] allowed all these parties to treat Plaintiff poorly, and did not address Plaintiff's complaints of discrimination.
>
> * * *
>
> 60.    Plaintiff reported that Brad Fegley would stand over Plaintiff, screaming at her while swinging both of his arms towards her as she was sitting down in a chair repeating, "When I email you, I expect you to answer my emails right away." All while standing in a threatening manner over Plaintiff.

Filing 21 at 5–6 (¶¶ 46, 60); see Filing 35 at 7 (citing these paragraphs). Complaints that someone treated George "poorly" provide no plausible inference of racially discriminatory intent either by the actor or by the person to whom the complaints were reported. While George alleges that she complained about "discrimination," that allegation is conclusory—as are her allegations that any discrimination occurred—such that ¶ 46 does not plausibly suggest any discriminatory intent by Miller. Although George characterizes the incident with Fegley as involving "threatening" behavior, that allegation is completely devoid of any reference to race or any plausible inference of racially discriminatory intent. See Filing 21 at 6 (¶ 60).

The Court cannot reasonably infer from these and George's various unconnected conclusory allegations of "discrimination" or "racism" that the misconduct alleged against Poole, Fegley, Miller, or anyone else to whom George reported alleged misconduct provide an

inference of racially discriminatory intent. These incidents and the denial of a pay raise are not plausibly pleaded to be motivated by "intentional discrimination" simply because George is African-American and the actors are not. *See Absolute Essence LLC*, 117 F.4th at 1048 (explaining that the allegations must plausibly show misconduct motivated by intentional discrimination); *Christopherson v. Bushner*, 33 F.4th at 495, 499 (8th Cir. 2022) (explaining that "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility" (internal quotation marks and citations omitted)). Something more is required to make the necessary connection between conduct and discriminatory intent, but nothing more is offered here.

The only conduct on which George relies to salvage this claim that even hints at racial content is comments by Joan Hill. Filing 35 at 7 (citing Filing 21 at (¶¶ 33–34)). Those comments allegedly included comments about George's hair being in her way, about "black peoples' hair being difficult to maintain," and asking George if that was her "real hair," Filing 21 at 4 (¶ 31); telling George that her hoop earrings made her look like "Frakenstein" [sic], Filing 21 at 4 (¶ 32); playing rap music when she was in the office with George, which George "believes [was] because she was stereotyping [George]," Filing 21 at 4 (¶ 33); and responding to George's statement that she was surprised that Hill liked that type of music by asking, "Why, cuz they use the word nigger in it?" Filing 21 at 4 (¶ 34). Under the law, stray racist or bigoted comments alone are not sufficient to constitute discrimination in violation of equal protection, so they are also not sufficient to generate an inference of racially discriminatory intent. *See Jones v. McNeese*, 746 F.3d 887, 897 n.7 (8th Cir. 2014) (citing *Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000), and *Simmons v. Oce–USA, Inc.*, 174 F.3d 913, 915–16 (8th Cir. 1999)). This is so, because "[n]ot every act committed by [a] person who has made bigoted

comments is motivated by a discriminatory intent." *Hill v. Ruiz*, No. 220CV01569RFBNJK, 2022 WL 1084754, at *4 (D. Nev. Jan. 3, 2022). George has not alleged facts sufficient to connect the allegedly bigoted comments to discriminatory intent for any conduct by Hill that interfered with her protected right to contract. *Absolute Essence LLC*, 117 F.4th at 1048 (explaining that that factual allegations not legal conclusions must plausibly allege misconduct motivated by a discriminatory intent); *Warren*, 79 F.4th at 973 (explaining that a plaintiff asserting a § 1981 discrimination claim must establish *inter alia* discriminatory intent by the defendant in interfering with a protected right to contract).

Defendants are entitled to judgment on the pleadings on Count I because it fails to state a claim upon which relief can be granted.

### 2. *George's § 1981 Retaliation Claim in Count II*

Count II of George's Second Amended Complaint, also against the Board and Miller, Cunningham, and Fegley in their individual capacities, is captioned as "42 U.S.C. § 1981 Retaliation." Filing 21 at 10. Defendants seek dismissal of this claim in its entirety because George has improperly asserted a "freestanding" claim pursuant to 42 U.S.C. § 1981. Filing 33 at 1 (¶ 2).

#### a. The Parties' Arguments

Defendants argue that a § 1981 claim against a state actor may only be brought pursuant to § 1983. Filing 34 at 9. Defendants argue that George has brought only a "freestanding" § 1981 claim because—unlike Count I—Count II includes no reference to the claim being "raised through" § 1983. Filing 34 at 10. Defendants argue that the failure to bring this claim under § 1983 is "fatal" to the claim. Filing 34 at 10.

George responds that her § 1981 retaliation claim is "explicitly" brought under § 1983, "as courts have held Section 1983 provides the exclusive remedy for Section 1981 claims against

state actors." Filing 35 at 7. She states that her opposition to judgment on this claim is the following: (1) the Fourteenth Amendment protections are triggered by action of state actors, and the applicability of § 1983 is contingent upon the presence of state action; (2) there must be a violation of rights under § 1981, which is distinct from the procedural requirements of § 1983; and (3) where she asserted a § 1981 claim through § 1983 in Count I, that context demonstrates her awareness of the procedural requirements and compliance with the established legal framework, so Count II should not be viewed in isolation. Filing 35 at 7–8.

In reply, Defendants argue that George has admitted that she was aware of the requirement to raise her § 1981 claim through § 1983, and that the § 1981 claim in Count II is "freestanding." Filing 36 at 5. Defendants argue that the Court should reject George's argument to ignore her failure to assert her § 1981 claim through § 1983 and to imply the presence of reliance on § 1983 in Count II. Filing 36 at 5–6.

b. "Freestanding" § 1981 Claims

In *Onyiah v. St. Cloud State Univ*., 5 F.4th 926 (8th Cir. 2021), the Eighth Circuit rejected an appeal asserting that "freestanding § 1981 claims" had been wrongly dismissed on a Rule 12(b)(6) motion. The Eighth Circuit explained,

> The district court held Onyiah was barred from asserting § 1981 retaliation claims against state actors. *See Artis [v. Francis Howell North Band Booster Ass'n]*, 161 F.3d [1178], 1182 [(8th Cir. 1998)] ("A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983."). Onyiah views the rule in *Artis* as dicta and says that case relied on a Supreme Court opinion, *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), which he maintains was overruled when Congress amended § 1981 through the Civil Rights Act of 1991, Pub.L. 102-166, 105 Stat. 1071. Onyiah urges us to follow the approach adopted by our sister circuit, which held "that the amended ... § 1981 contains an implied cause of action against state actors, thereby overturning *Jett's* holding that ... § 1983 provides the exclusive federal remedy against state actors for the violation of rights under ... § 1981." *Fed'n of Afr. Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996). Under our precedent, we cannot reach the same conclusion. *See Flowers v. City of Minneapolis*, 558 F.3d 794, 800 (8th Cir. 2009) ("*[B]ecause* [the plaintiff]

21

may pursue a § 1981 claim against the City *only through* § 1983 ... the district court properly dismissed [the plaintiff's] claim against the City under § 1981.") (emphasis added); *accord Campbell v. Forest Pres. Dist. of Cook Cnty.*, 752 F.3d 665, 671 (7th Cir. 2014) ("We now join the overwhelming weight of authority and hold that *Jett* remains good law, and consequently, § 1983 remains the exclusive remedy for violations of § 1981 committed by state actors.").

Since *Artis*, we have repeatedly recognized the prohibition on freestanding § 1981 claims against state actors. *See Jones v. McNeese*, 746 F.3d 887, 896 (8th Cir. 2014); *Flowers*, 558 F.3d at 800; *Lockridge v. Bd. of Trs. of U. of Ark.*, 315 F.3d 1005, 1007 (8th Cir. 2003) (en banc). Onyiah suggests these statements were dicta. But this is not true of *Flowers*, where our holding depended on applying the rule prohibiting direct § 1981 claims against state actors. 558 F.3d at 800. Onyiah's argument is therefore foreclosed. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (noting the cardinal rule that a panel must follow a prior panel's holding). The district court correctly dismissed Onyiah's freestanding § 1981 claims.

*Onyiah*, 5 F.4th at 929–30.

>  c. George's § 1981 Retaliation Claim Is a "Freestanding" § 1981 Claim
>     Foreclosed by Circuit Precedent

There can be little doubt that the Eighth Circuit's decision in *Onyiah* forecloses George's § 1981 retaliation claim in Count II, where George admits that Count II is a "freestanding" § 1981 claim. Filing 35 at 7–8; *see also Onyiah*, 5 F.4th at 929–30 (describing a § 1981 claim that is not brought under § 1983 as "freestanding"). The decision in *Onyiah* did not suggest that reliance on § 1983 can be demonstrated from the context of another § 1981 claim that was properly brought under § 1983. Indeed, in *Onyiah*, the Eighth Circuit upheld dismissal of "freestanding § 1981 retaliation claims," then reviewed summary judgment on the plaintiff's "other § 1981 retaliation claims brought under § 1983." *Id.* at 929. Thus, *Onyiah* establishes a bright-line rule that a § 1981 claim is barred if it is not explicitly brought under the exclusive remedy of § 1983. *Id.*

Nevertheless, George argues that her § 1981 retaliation claim is "explicitly" brought under § 1983, despite the fact that "§ 1983" is not mentioned anywhere in Count II. *See* Filing 21

at 10–11. George argues that she brought the claim "explicitly" under § 1983, "as courts have held Section 1983 provides the exclusive remedy for Section 1981 claims against state actors." Filing 35 at 7. George's use of "explicitly" is a redefinition of that word. George did not "explicitly" bring her § 1981 claim under § 1983 because she did not "expressly" state her reliance on § 1983 as the vehicle for the claim. *See Merriam-Webster Unabridged Dictionary Online* (defining "explicitly" as "expressly"), available at https://unabridged.merriam-webster.com/unabridged/explicitly. George's argument is that she must have brought her § 1981 claim under § 1983 because that is what courts require. Thus, her argument is actually that it is "implicit" from her assertion of a § 1981 claim itself that the claim was brought pursuant to § 1983. *See  Merriam-Webster Unabridged Dictionary Online* (defining "implicit" as "tacitly involved in something else : capable of being understood from something else though unexpressed : capable of being inferred : implied"), available at https://unabridged.merriam-webster.com/unabridged/implicit. The Eighth Circuit (like other courts) explicitly requires that a § 1981 claim be explicitly brought under § 1983. *Onyiah*, 5 F.4th at 929–30. George failed to meet this requirement because she failed to state expressly her reliance on § 1983 to bring this § 1981 claim.

Defendants are entitled to judgment on the pleadings on this claim because it fails to state a claim upon which relief can be granted.

### 3. *George's Unconstitutional Policy, Investigation, Supervision, and Training Claim in Count VI against the Board*

Count VI of George's Second Amended Complaint, also against the Board and Miller, Cunningham, and Fegley in their individual capacities, is captioned as "42 U.S.C. § 1983, (Unconstitutional official policy; failure to investigate, supervise and train)." Filing 21 at 13.

Defendants seek dismissal of Count VI as asserted against the Board because George has failed to allege a continuing, widespread, persistent pattern of misconduct. Filing 33 at 1 (¶ 4).

a.   The Parties' Arguments

Defendants argue that George has made only a "bare recital" of unconstitutional customs by the Board amounting to deliberate indifference as the moving force behind George's injuries. Filing 34 at 17 (citing Filing 21 at 14 (¶ 125)). Defendants argue that George offers no factual support for this conclusion. Filing 34 at 17. Defendants argue that George's only reference to "deliberate indifference" is also conclusory. Filing 34 at 17; *see also* Filing 21 at 14 (¶ 125) alleging "deliberate indifference" to the failure to investigate, train, and supervise). Thus, Defendants argue that George nowhere alleges that there was a continuing, widespread, persistent pattern of misconduct as required to state this claim. Filing 34 at 17.

George asserts that her allegations are sufficient. Filing 35 at 11. As examples, she argues that she has alleged in detail numerous instances where she was subjected to discriminatory and retaliatory behavior by her supervisors and coworkers, and those instances were ignored or inadequately addressed by the Board. Filing 35 at 11. She argues that "[t]his pattern of inaction and failure to address complaints" demonstrates deliberate indifference to her rights. Filing 35 at 11. She argues that she has pointed to this pattern occurring over several years. Filing 35 at 11.

In reply, Defendants argue that George cites no supporting legal authority for her assertion that Count VI states a claim against the Board. Filing 36 at 10. Defendants argue that "[n]o amount of wordsmithing" in George's brief can cure the legal deficiencies in her Complaint. Filing 36 at 11.

b.   Standards for *Monell* Liability Under § 1983

The Eighth Circuit has reiterated that in order to impose liability on a state governmental entity—such as the Board—for a constitutional violation, a plaintiff "must prove that a[n]

[entity's] policy or custom was the 'moving force [behind] the constitutional violation.'" *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 953 (8th Cir. 2024) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999), in turn quoting *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), with alterations). To allege the existence of an unconstitutional unofficial custom, a plaintiff must "allege facts plausibly suggesting '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) an injury by acts pursuant to the government entity's custom.'" *Id.* at 954 (quoting *Mitchell v. Kirchmeier*, 28 F.4th 888, 899–900 (8th Cir. 2022)). It is not enough if a plaintiff "simply makes conclusory assertions that such misconduct occurred." *Id.*

As to a claim for failure to train or supervise, a plaintiff must "allege facts plausibly suggesting (1) the [governmental entity's] 'officer training practices were inadequate'; (2) the [governmental entity] 'was deliberately indifferent to the rights of others in adopting these training practices, and' the [governmental entity's] 'failure to train was a result of deliberate and conscious choices it made'; and (3) the [governmental entity's] 'alleged training deficiencies caused [the plaintiff's] constitutional deprivation.'" *Id.* (quoting *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013)). Again, conclusory allegations are insufficient, because a plaintiff must allege specific instances and examples of inadequate training or supervision that support an inference of an unconstitutional policy or custom. *Id.*

   c. George Does Not Plead Sufficient Facts to Support an Unconstitutional Custom

George makes a single allegation of deliberate indifference by the Board in support of Count VI:

125.    Such failures to investigate, train, and supervise were conducted under color of state law and such unconstitutional customs practices and/or policies amounted to gross negligence, deliberate indifference, or intentional conduct, which were the moving force behind Plaintiff's injuries.

Filing 21 at 14 (¶ 125). This allegation standing alone is conclusory and thus insufficient. *See Watkins*, 102 F.4th at 954. The allegations of "[s]uch failures to investigate, train, and supervise" are similarly deficient:

122.    Defendant BRUN, by and through its policy makers, failed to ensure through custom, policy and/or practice or training that its employees and supervisors would obey, follow, and otherwise and abide by appropriate protocol and procedures regarding discrimination in the workplace and other violations of civil rights and failed to properly investigate complaints or incidents of such unlawful conduct by its employees.

123.    Defendant BRUN, and/or other final policy makers had actual or constructive notice of the failures of its personnel to obey, follow and/or enforce appropriate policies and/or protocols or implement effective training and supervision of police officers as to the excessive use of force as shown by recent numerous other EEOC claims and lawsuits pending, settled, or otherwise adjudicated against BRUN for issues of discrimination and retaliation.

124.    Defendant Jeff Miller had actual notice and did not take appropriate steps to address the complaints of discrimination and harassment against Plaintiff levied by individuals such as Defendant Brad Fegley.

Filing 21 at 13 (¶¶ 122–124). Again, ¶¶ 122 and 123 are entirely conclusory and inadequate. *Watkins*, 102 F.4th at 954. As to ¶ 123, the Court has already observed that the incident involving Brad Fegley provides no plausible inference of discriminatory intent or indeed any hint of racial discrimination. Thus, it fails to provide any plausible inference of a pattern or custom of unconstitutional conduct. *Id.* Even reading the Second Amended Complaint as a whole to discern what other incidents of supposed discrimination and harassment were "levied by" individuals other than Fegley, they do not plausibly suggest the existence of a continuing, widespread, persistent pattern of unconstitutional racial discrimination by the Board's employees or inadequate training, let alone deliberate indifference by the Board to any such problems. *Id.*

26

The Board is entitled to judgment on the pleadings on Count VI against it.

### C. Counts Challenged Based on Qualified Immunity

Defendants also seek judgment on the pleadings on Counts I, II, III, and VI against the Individual Defendants based on qualified immunity. Filing 33 at 1–2; Filing 34 at 10–16. The Court has already determined that all Defendants are entitled to judgment on the pleadings on Counts I and II for failure to state claims upon which relief can be granted. Therefore, the Court need not consider whether the Individual Defendants have qualified immunity to those claims, because the absence of sufficient allegations of any constitutional violations establishes qualified immunity. *See Mayfield v. Missouri House of Representatives*, 122 F.4th 1046, 1056 (8th Cir. 2024) (explaining that the qualified immunity analysis ends if the plaintiff fails to show a constitutional violation). Thus, the Court will consider the Individual Defendants' challenges to Count III and Count VI based on qualified immunity. However, the Court will first summarize the standards for qualified immunity.

#### 1. Standards for Qualified Immunity

"Section 1983 provides a civil cause of action against any person who, under color of state law, causes a deprivation of the rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wagner v. Jones*, 664 F.3d 259, 268 (8th Cir. 2011) (citing 42 U.S.C. § 1983 and *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009)). "When a state actor is sued in her individual capacity, she can plead an affirmative defense of qualified immunity." *Id.* (citing *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009)). However, "[q]ualified immunity is normally 'an immunity from suit rather than a mere defense to liability.'" *Ledbetter v. Helmers*, 133 F.4th 788, 793 (8th Cir. 2025) (quoting *Watson v. Boyd*, 2 F.4th 1106, 1110 (8th Cir. 2021), in turn quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Consequently, "the policies behind the doctrine . . . include 'resolving immunity questions at the earliest possible

stage in litigation.'" *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (quoting *Pearson*, 555 U.S. at 232). The Eighth Circuit "will uphold a dismissal based on qualified immunity if the immunity is apparent on the face of the plaintiff's complaint." *Grooms v. Privette*, 127 F.4th 730, 733 (8th Cir. 2025) (citing *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)).

Stated briefly, "[q]ualified immunity attaches if the defendants' conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Billingsley v. St. Louis Cnty.*, 70 F.3d 61, 62 (8th Cir. 1995)). More specifically,

> Where a public official asserts [he or she is] entitled to qualified immunity, we undertake "a two-part inquiry to determine whether (1) a constitutional violation occurred, and (2) whether the right in question was clearly established at the time of the violation." *Henry [v. Johnson]*, 950 F.3d [1005,] 1010–11 [(8th Cir. 2020)] (citing *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014)). "[A]n official is entitled to qualified immunity unless both prongs are satisfied," and therefore "our analysis will end if either of the two is not met." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (citation omitted).
>
> * * *
>
> "A right is clearly established if 'a reasonable official would understand that what he is doing violates that right.'" *Rinne [v. Camden Cnty.]*, 65 F.4th [378,] 384 [(8th Cir. 2023)] (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "Existing precedent need not be directly on point, but it must place the constitutionality of the official's conduct 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Id.* at 384–85 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam)).

*Mayfield*, 122 F.4th at 1056.

### 2. *George's First Amendment Retaliation Claim in Count III*

Count III against the Board and Miller, Cunningham, and Fegley in their individual capacities, is captioned as "42 U.S.C. § 1983, First Amendment." Filing 21 at 11. The gravamen

of this claim is that "Plaintiff spoke out on [a matter of] public concern by opposing the harassment of her coworkers and filed grievances. She then suffered adverse employment actions after Plaintiff engaged [in] this protected conduct." Filing 21 at 11 (¶ 102). The Individual Defendants assert qualified immunity as a defense to this claim.

### a. The Parties' Arguments

Each of the Individual Defendants argues that he or she is entitled to qualified immunity because there are no allegations that they engaged in any retaliatory behavior. Filing 34 at 14. Miller argues that George's Second Amended Complaint does not allege that he engaged in any retaliatory behavior toward George prior to Miller's separation from employment. Filing 34 at 14. Cunningham argues that offering George different positions was not subjecting her to different terms or conditions of employment because George did not accept those offers. Filing 34 at 14. She argues further that she did not violate a clearly established constitutional right either by offering George different positions or by becoming "upset" when George did not accept those jobs. Filing 34 at 14. Finally, Fegley argues that even accepting George's factual allegation about his conduct as true, George does not allege that Fegley took any action against George after she allegedly engaged in conduct protected by the First Amendment. Filing 34 at 14.

George's response in its entirety is the following:

> Plaintiff alleges that the Individual Defendants retaliated against her for exercising her First Amendment rights. Qualified immunity does not protect officials who retaliate against individuals for engaging in protected speech. Plaintiff has alleged that she faced adverse employment actions after speaking out against discrimination and harassment. For instance, Mr. Miller's perceived disinterest during meetings and his failure to address complaints of discrimination indicate retaliatory intent. Ms. Cunningham's offer of unsuitable job positions and her upset reaction when Plaintiff declined them further support the claim of retaliation. Mr. Fegley's aggressive behavior towards Plaintiff also indicates retaliatory conduct. Plaintiff's Complaint also details that UNMC forced Plaintiff out of her position and into a role she was neither qualified for nor suitable, and was moved there in direct response to the complaints she raised. These actions

29

clearly violate Plaintiff's First Amendment rights, and the Individual Defendants are not entitled to qualified immunity.

Filing 35 at 9.

> b. In reply, Defendants argue that George fails to allege that any of the Individual Defendants were responsible for the allegedly adverse employment action upon which she bases her § 1983 retaliation claim. Filing 36 at 8. More specifically, Miller argues that his purported "disinterest" does not allege conduct that resulted in an adverse employment action. Filing 36 at 8. Cunningham argues that her mere offer of a different position and purported disappointment with George's refusal did not result in a material employment disadvantage. Filing 36 at 8–9. Fegley argues that George's allegations about his "aggressive" behavior miss the mark because they are insufficient to establish that George suffered an adverse employment action because of his conduct. Filing 36 at 9.First Amendment Retaliation

"To succeed on [a] First Amendment retaliation claim, the [plaintiff] must prove (1) [she] engaged in protected activity, (2) [an individual defendant] took an adverse employment action against [her], and (3) the protected speech was a 'substantial or motivating factor' in that decision to take the adverse employment action." *Noon v. City of Platte Woods, Missouri*, 94 F.4th 759, 764 (8th Cir. 2024) (quoting *Henry v. Johnson*, 950 F.3d 1005, 1011 (8th Cir. 2020)). In Count III, George alleges that her protected speech resulting in adverse action was speaking out in opposition to the harassment that she was suffering from her coworkers and filing grievances. Filing 21 at 11 (¶ 102). "A public employee's First Amendment right to speak on a matter of public concern was clearly established" by 2021 when George alleges that she suffered retaliation. *Mayfield*, 122 F.4th at 1057 (noting that this right was clearly established in August 2020 when the plaintiff allegedly suffered retaliation). To establish the "adverse employment action" requirement, Eighth Circuit precedent requires an employee to establish that she suffered "a material change in the terms or conditions" of her employment and that the change would "chill a person of ordinary firmness" from continuing to engage in activity protected by the First

Amendment. *Grooms v. Privette*, 127 F.4th 730, 734 (8th Cir. 2025) (internal quotation marks and citations omitted).

c.  The Individual Defendants Are Entitled to Qualified Immunity on George's First Amendment Retaliation Claim

The Individual Defendants assert that George has not sufficiently pleaded one or both of the requirements to defeat their qualified immunity as to her First Amendment retaliation claim in Count III. The Court will consider either or both prongs as to each Individual Defendant as appropriate.

Miller argues that he did not engage in any retaliatory conduct toward George prior to Miller's separation from employment. Filing 34 at 14. Thus, he argues that George has not sufficiently pleaded the "constitutional violation" prong of the qualified immunity analysis, *see Mayfield*, 122 F.4th at 1056, where George has not pleaded either that Miller took adverse action against her or that her protected speech was a substantial or motivating factor in any decision Miller made, *Noon*, 94 F.4th at 764. The Court agrees. George points to Miller's perceived disinterest during meetings and his failure to address complaints of discrimination as indicating retaliatory intent, but she does not point to any conduct by Miller that imposed an adverse action on her. Filing 35 at 9. Furthermore, the Court observed above that George's allegations of "discrimination" were conclusory, so that she has not plausibly pleaded that Miller failed to address any complaints of discrimination, let alone that George's complaints were a substantial or motivating factor for any inaction on his part. Miller is entitled to qualified immunity on this claim for failure to plead a plausible violation of her First Amendment right against retaliation. *Mayfield*, 122 F.4th at 1056 (explaining that a plaintiff must show a constitutional violation as one requirement to overcome qualified immunity).

Cunningham argues that offering George different positions was not subjecting her to adverse action, not least because George did not accept the offered positions. Filing 34 at 14. Cunningham also argues that she did not violate a clearly established constitutional right either by offering George different positions or by becoming "upset" when George did not accept them. Filing 34 at 14. Thus, Cunningham argues that George failed to establish either prong of the qualified immunity analysis as to her. The Court agrees. George has not plausibly alleged an adverse action required to establish a violation of her First Amendment rights against retaliation by Cunningham based on Cunningham offering different positions that George did not take. *See Noon*, 94 F.4th at 764 (stating adverse action as one element required to establish a First Amendment retaliation claim); *Mayfield*, 122 F.4th at 1056 (explaining that a plaintiff must satisfy a constitutional violation as one requirement to overcome qualified immunity). George does not identify who ultimately "forced [her] to change positions from Cashiering Associate at UNMC to an office associate position that primarily deals with nurses and has a completely different skill set than what was her previous job." Filing 21 at 7 (¶ 69); Filing 35 at 9. Such a change might constitute "a material change in the terms or conditions" of her employment and "chill a person of ordinary firmness" from continuing to engage in protected activity. *See Grooms*, 127 F.4th at 734. However, George does not allege or argue that the person who "forced" her position change was Cunningham. *See* Filing 21 at 7 (¶ 69); Filing 35 at 9. Furthermore, George cites no authority clearly establishing a violation of her First Amendment rights by Cunningham offering her a different position to remove her from an employment situation that George found unpleasant and that George alleges in only a conclusory manner was racially discriminatory. Nothing clearly establishes such a right so that a reasonable official in Cunningham's place would understand that what she was doing violated that right; certainly,

George has cited no precedent that would have placed the constitutionality of Cunningham's conduct "beyond debate." *Mayfield*, 122 F.4th at 1056 (quoting *Rinne*, 65 F.4th at 384). Cunningham is entitled to qualified immunity on this claim because George has failed to plead plausibly either of the requirements to defeat qualified immunity.

Finally, Fegley's allegedly "aggressive" behavior toward George falls far short of a constitutional violation where there are no allegations that his behavior was based on George's race or her complaints about discrimination. Filing 21 at 6 (¶ 60); Filing 35 at 9. Assuming that Fegley was white and that George was African-American is simply not enough to plausibly suggest that Fegley's "aggressive" behavior toward George was based on either her race or her complaints about discrimination. Thus, George has failed to plead a constitutional violation by Fegley at the first prong of the qualified immunity analysis. *Noon*, 94 F.4th at 764 (stating adverse action motivated by protected activity as elements required to establish a First Amendment retaliation claim); *Mayfield*, 122 F.4th at 1056 (explaining that a plaintiff must show a constitutional violation as one requirement to overcome qualified immunity). Furthermore, while Fegley's alleged conduct might have been rude—even extremely rude and dismissive— George has cited no precedent clearly establishing that Fegley would have known such conduct would violate George's First Amendment rights against retaliation and put the constitutionality of his conduct "beyond debate." *Mayfield*, 122 F.4th at 1056 (quoting *Rinne*, 65 F.4th at 384). Fegley is entitled to qualified immunity on this claim because George has failed to plead plausibly either of the requirements to defeat qualified immunity.

Thus, the Individual Defendants are entitled to judgment on the pleadings on Count III based on qualified immunity.

3. *George's Unconstitutional Policy, Investigation, Supervision, and Training Claim in Count VI against the Individual Defendants*

Count VI is captioned as "42 U.S.C. § 1983, (Unconstitutional official policy; failure to investigate, supervise and train)." Filing 21 at 13. The gravamen of this claim is that "Defendant [Board], by and through its policy makers, failed to ensure through custom, policy and/or practice or training that its employees and supervisors would obey, follow, and otherwise and [sic] abide by appropriate protocol and procedures regarding discrimination in the workplace and other violations of civil rights and failed to properly investigate complaints or incidents of such unlawful conduct by its employees." Filing 21 at 13 (¶ 122). The Court assumes that the Individual Defendants are the "policy makers" to whom this claim refers.

a. The Parties' Arguments

The Individual Defendants argue that they are entitled to qualified immunity on this claim. Filing 34 at 15. Miller asserts that George makes only a conclusory allegation that he did not take appropriate steps to address her complaints of discrimination and harassment. Filing 34 at 15 (citing Filing 21 at 13 (¶ 124)). Cunningham argues that George offers no support or justification for including her in Count VI because George cannot establish that Cunningham violated a clearly established constitutional right where George has not shown that Cunningham failed to investigate, supervise, and train. Filing 34 at 16. Likewise, Fegley argues that George's Second Amended Complaint is "devoid" of any allegations establishing that he failed to investigate, supervise, and train others. Filing 34 at 16.

George responds that qualified immunity does not protect officials who fail to address known violations of constitutional rights and that she has alleged the Individual Defendants' failure to investigate and address complaints of discrimination. Filing 35 at 10. She explains,

For example, Mr. Miller's failure to address Plaintiff's complaints of discrimination and his removal of Plaintiff as the support person for a coworker

34

indicate a lack of proper supervision and training. Ms. Cunningham's offer of unsuitable job positions and her upset reaction when Plaintiff declined them further support the claim of failure to investigate and address discrimination. Mr. Fegley's aggressive behavior towards Plaintiff also indicates a failure to supervise and train employees properly. These actions demonstrate a clear violation of Plaintiff's constitutional rights, and the Individual Defendants are not entitled to qualified immunity.

Filing 35 at 10.

In reply, Miller argues that his alleged failure to address George's unspecified complaints of discrimination is insufficient to state a constitutional violation. Filing 36 at 9. Furthermore, he argues that his removal of George as the support person for a coworker was at George's request, so that does not plausibly suggest a failure to investigate, supervise, and train. Filing 36 at 9. Cunningham argues that allegations that she offered George "unsuitable" positions and was upset when George declined them does nothing to support a failure to investigate and address discrimination. Filing 36 at 9–10. Cunningham argues further that she did not violate a clearly established right when George does not allege any facts demonstrating Cunningham's failure to investigate, supervise, or train. Filing 36 at 10. Finally, Fegley argues George does not explain how he failed to investigate or failed to supervise or train employees. Filing 36 at 10.

b.    Supervisor Liability for Failure to Investigate, Supervise, or Train

"While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue." *Poemoceah v. Morton Cnty., N. Dakota*, 117 F.4th 1049, 1056–57 (8th Cir. 2024) (quoting *Elder v. Gillespie*, 54 F.4th 1055, 1065 (8th Cir. 2022)). In other words, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Hunt v. Acosta*, 109 F.4th 1003, 1009 (8th Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

"To succeed on a failure to train or supervise claim, [a plaintiff] must show that [the individual defendants]: (1) had notice of a pattern of unconstitutional acts committed by subordinate officers, (2) were deliberately indifferent to or tacitly authorized the acts, and (3) failed to take sufficient remedial action, which (4) proximately caused injury to [the plaintiff]." *Hunt*, 109 F.4th at 1009 (citing *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018)). Similarly, to plead a failure to investigate claim, a plaintiff must show the individual supervisor: "(1) Received notice of a pattern of unconstitutional acts committed by subordinates; (2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) Failed to take sufficient remedial action; and (4) That such failure proximately caused injury." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (quoting *Jane Doe A. v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990)).

### c. The Individual Defendants Are Entitled to Qualified Immunity on George's Failure to Investigate, Supervise, and Train Claim

The Individual Defendants assert that George has not sufficiently pleaded one or both of the requirements to defeat their qualified immunity as to her failure to investigate, supervise, and train claim in Count VI. The Court will consider either or both prongs as to each Individual Defendant as appropriate.

George makes only a conclusory allegation that Miller did not take appropriate steps to address her complaints of discrimination and harassment. Filing 34 at 15 (citing Filing 21 at 13 (¶ 124)). That allegation is the following:

> 124.   Defendant Jeff Miller had actual notice and did not take appropriate steps to address the complaints of discrimination and harassment against Plaintiff levied by individuals such as Defendant Brad Fegley.

Filing 21 at 13 (¶ 124). Such a conclusory allegation is far from sufficient to allege that Miller had notice of a pattern of unconstitutional acts committed by subordinates. *See Hunt*, 109 F.4th

36

at 1009 (first element of a failure to train or supervise claim); *Andrews*, 98 F.3d at 1078 (first element of a failure to investigate claim); *In re Pre-Filled Propane Tank Antitrust Litigation*, 893 F.3d at 1056 ( "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action . . . [that] tenders naked assertions devoid of further factual enhancement" will not suffice under Rule 12(c) (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotations omitted)).

Also to no avail is George's additional argument—made only in her brief, Filing 35 at 10—that Miller's removing her as the support person for another employee shows a lack of supervision and training. This allegation fails to provide plausible support for a constitutional violation where the removal was at George's request. *Mayfield*, 122 F.4th at 1056 (explaining that the first requirement to overcome qualified immunity is that "a constitutional violation occurred"). George alleges in her Second Amended Complaint that she shared concerns with Miller "about not being the support person for [Poole]," and Miller sent her an email that she "would no longer be the support person for Mr. Poole, [and] that decision was made because Plaintiff shared with Mr. Miller the rudeness of Mr. Poole's behavior to Plaintiff." Filing 21 at 5–6 (¶¶ 51, 53). Thus, George's own allegations show that Miller responded to George's complaints about Poole. These allegations also do not refer to any racial motive for Poole's behavior, only to his "rudeness," "bullying," and unspecified "harassment." Filing 21 at 5–6 (¶¶ 51, 53); *see also* Filing 21 at 3 (¶ 25) (alleging "rude bullying behavior from Craig Poole"). "Rudeness," "bullying," and unspecified "harassment" do not state conduct requiring supervision or training to avoid a constitutional violation. Thus, George's claim against Miller in Count VI fails to defeat Miller's qualified immunity because George has not plausibly pleaded a

constitutional violation. *Mayfield*, 122 F.4th at 1056 (explaining that the first requirement to overcome qualified immunity is that "a constitutional violation occurred").

George fails to plead adequately that Cunningham violated a clearly established constitutional right where George's allegations do not plausibly support a claim that Cunningham failed to investigate, supervise, and train. George does not identify any failure by Cunningham to supervise or train subordinates. *See* Filing 35 at 10. Even accepting as true George's allegations that Cunningham offered her only "two jobs that she was not qualified for as a direct replacement of her current position," Filing 21 at 7 (¶ 62), George has not defeated Cunningham's qualified immunity. George has not plausibly pleaded that Cunningham violated her rights by offering positions beyond George's qualifications when George has not alleged that any positions within her qualifications were available as alternatives. *Mayfield*, 122 F.4th at 1056 (explaining that the first requirement to overcome qualified immunity is that "a constitutional violation has occurred"). Furthermore, George has not pointed to any precedent clearly establishing a right to a position within her qualifications to remedy alleged discrimination such that a reasonable person in Cunningham's position would have understood that what she was doing violated George's rights. *Id.* (explaining that the second requirement is that "the right was clearly established at the time of the violation," meaning that precedent would show that a reasonable official would understand that what she was doing violates the right at issue). Thus, George's claim against Cunningham in Count VI fails to defeat Cunningham's qualified immunity.

George's allegations against Fegley in Count VI are woefully inadequate to defeat his qualified immunity to any claim of failure to investigate, supervise, or train. George argues that "Mr. Fegley's aggressive behavior towards Plaintiff also indicates a failure to supervise and train

employees properly." Filing 35 at 10. An allegation that Fegley engaged in "screaming" or "threatening" behavior toward George, Filing 21 at 6 (¶ 60), provides no plausible inference that Fegley failed to investigate any alleged discrimination toward George or failed to supervise or train any subordinates. *See Hunt,* 109 F.4th at 1009 (on a failure to supervise or train claim, the supervisor must have failed to take sufficient remedial action in response to a pattern of unconstitutional acts by subordinates); *Andrews,* 98 F.3d at 1078 (on a failure to investigate claim, the supervisor must have failed to take sufficient remedial action in response to a pattern of unconstitutional acts committed by subordinates). Thus, George fails to allege plausible support for any constitutional violation to overcome Fegley's qualified immunity to Count VI. *Mayfield,* 122 F.4th at 1056 (explaining that the first requirement to overcome qualified immunity is that "a constitutional violation has occurred").

Thus, the Individual Defendants are entitled to judgment on the pleadings on Count VI based on qualified immunity.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Defendants' "Partial Motion for Judgment on the Pleadings," Filing 33, is granted as follows:

1.     Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is granted in favor of all Defendants on Counts I and II for failure to state claims upon which relief can be granted;

2.     Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is granted in favor of the Defendant Board on Count VI for failure to state claims upon which relief can be granted; and

3.     Judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is granted in favor of the Individual Defendants on Counts III and VI based on qualified immunity.

This case will proceed only on Plaintiff George's claims against the Defendant Board in Counts III, IV, and V.

Dated this 3rd day of June, 2025.

BY THE COURT:

Brian C. Buescher
United States District Judge